UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                            Case Number 15-20472

v.                                                   Honorable David M. Lawson

KENNETH SMITH,

                Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Kenneth Smith has filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Smith has served approximately 60 months of a 146-month prison sentence for RICO conspiracy. He argues that a sentence reduction is justified by his medical conditions (obesity, hypertension, and asthma) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. Because Smith has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Smith pleaded guilty to charges of RICO conspiracy, 18 U.S.C. § 1962(d), and failure to appear, 18 U.S.C. § 3146(a)(1). On August 30, 2017, he was sentenced to 140 months for the conspiracy and a consecutive term of 6 months for failing to appear. He presently is confined by the Bureau of Prisons (BOP) at FCI Gilmer in Glenville, West Virginia, which is a medium security facility that houses around 1,440 inmates. Smith is 39 years old. He has served around 60 months

of his cumulative 146-month prison sentence. Public records of the BOP indicate that the defendant is scheduled to be released from prison on June 8, 2026.

The most recent data disclosed by the BOP indicates that there are 11 active coronavirus cases among inmates and five among staff at the Gilmer facility, although 290 inmates and 62 staff previously were diagnosed and now have recovered. Reports indicate that one inmate has died. *See* https://www.bop.gov/coronavirus/. The BOP also recently began reporting data on the number of COVID-19 vaccinations that it has administered to staff and inmates. The available data indicate that 114 staff and 113 inmates at Gilmer have been inoculated fully.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Smith relies on subparagraph (i) of the statute. Under that provision, the

Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy

statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Smith contends that he has several medical conditions that subject him to an elevated risk of complications from the highly-contagious novel coronavirus. He asserts that his asthma, hypertension, and overweight condition (body mass index (BMI) 29.5) all elevate his medical risk.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6. And the defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask

wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize at least nominally several pertinent medical conditions as potential risk factors. *See* CDC Risk Factors:

People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 19, 2021). However, none of the factors that the defendant has identified presently are classified as posing both a serious and certain risk of complications from the COVID-19 disease.

First, the defendant asserts that he has asthma, and his medical records indicate that he has been prescribed and regularly uses Albuterol and Lisonopril inhalers for his condition. Medical Notes dated July 27, 202, ECF No. 515, PageID.2888. However, there is no indication anywhere in the medical record that the defendant's asthma is either "moderate" or "severe," which are the grades of the condition recognized by the CDC as having significant COVID-related health risks. *See* CDC Risk Factors, *supra*. Moreover, the CDC recently has updated its guidance to downgrade moderate and severe asthma from the category of factors indicating that persons "*are at increased risk*" to a factor that merely indicates that a person "*might*" be at increased risk. *Ibid.* (emphases added). The defendant's records do not substantiate the presence of any asthma diagnosis that even "might" increase his risk, according to the latest CDC guidance.

Second, the defendant's diagnosis of "essential hypertension," *see* Medical Notes dated Mar. 2, 2018, ECF No. 515, PageID.2893, also is not among the factors that pose both a serious and certain medical risk according to the current CDC guidance. Again, "hypertension" now is featured only as a contingent factor that "might" place a person at higher risk. Moreover, this and other federal courts have noted that only the more specific diagnosis of "pulmonary hypertension" is among the recognized serious risk factors, in contrast with the more prevalent condition of essential or systemic hypertension. *United States v. Blewett*, No. 06-20585, 2021 WL 289552, at *4 (E.D. Mich. Jan. 28, 2021). Nothing in the defendant's medical records suggests that he has been diagnosed with or presently is being treated for pulmonary hypertension.

Finally, the defendant asserts that his overweight condition elevates his risk. However, this condition, like those discussed above, presently is recognized by the CDC only as a contingent factor that "might" place someone at increased risk. Moreover, federal courts, including this Court, have declined to order the release of otherwise healthy inmates with obesity as their only cognizable medical risk, particularly where they were confined at facilities with few or no active coronavirus cases. *E.g.*, *United States v. Shumaker*, No. 18-20286, 2021 WL 289653, at *4 (E.D. Mich. Jan. 28, 2021) (collecting cases); *see also United States v. Ishmael*, No. 12-155, 2021 WL 567747, at *6 (E.D. Pa. Feb. 16, 2021) (collecting cases holding that obesity, hypertension, diabetes, and combinations thereof did not establish extraordinary medical risk).

Moreover, another highly pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be remote. Recent reports indicate that the probability of infection at Gilmer, although once quite high, now is low, with only 11 active cases among the 1,440 inmates, and five among staff. Further, even as the incidence of infection at Gilmer dramatically has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid deployment of newly available vaccines, which so far have been administered fully to 114 staff and 113 inmates at Gilmer. The likelihood of a severe outbreak only further will diminish as the vaccination program proceeds. The available medical records do not indicate that Smith has himself been vaccinated, but federal courts recently have held that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk. *United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases). Because the defendant has no tangible serious and certain risk factors, and considering the modest number of active cases among inmates at his facility, as well as the ongoing

vaccination program at Gilmer, the defendant has not sufficiently established that he presently faces an extraordinary and compelling medical risk that warrants his release

The defendant is a relatively young man with no discernible serious and certain medical risk factors, and he faces, at present, an apparently remote probability of infection. He has failed to establish that any extraordinary and compelling risk to his health presently warrants his immediate release.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors.

III.

Smith has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 510) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 8, 2021